UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLIVIA ARMOUR,<br>Plaintiff,<br>v.<br>HOUSING AUTHORITY; PSE&G; and VERIZON,<br>Defendants. | Case No.: 3:26-cv-04179-WQH-BJW<br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion for Leave to Proceed In Forma Pauperis filed by Plaintiff Olivia Armour. (ECF No. 8.)

## I. BACKGROUND

On July 22, 2026, Plaintiff Olivia Armour ("Plaintiff") initiated this action by filing a Complaint against Defendants Housing Authority, PSE&G, and Verizon (collectively, "Defendants"). (ECF No. 1.) Plaintiff filed a Motion for Leave to Proceed In Forma Pauperis ("First IFP Motion") the same day. (ECF No. 2.) On August 11, 2026, the Court denied Plaintiff's First IFP Motion. (ECF No. 5.)

On August 17, 2026, Plaintiff filed three Amended Complaints, each against a different defendant. (ECF Nos. 7, 10, 11). On August 19, 2026, Plaintiff filed a Second Amended Complaint ("SAC") against all Defendants, which is the operative pleading in this matter. (ECF No. 9.) On August 19, 2026, Plaintiff filed a second Motion for Leave to Proceed In Forma Pauperis ("Second IFP Motion"). (ECF No. 8.)

## II. IFP MOTION

All parties instituting a civil action in a district court of the United States, other than a petition for writ of habeas corpus, must pay a filing fee of $405. *See* 28 U.S.C. § 1914(a); S.D. Cal. Civ. L.R. 4.5. An action may proceed despite a party's failure to pay only if the party is granted leave to proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a). *See Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). "To proceed in forma pauperis is a privilege not a right." *Smart v. Heinze*, 347 F.2d 114, 116 (9th Cir. 1965). "An affidavit in support of an IFP application is sufficient where it alleges that the affiant cannot pay the court costs and still afford the necessities of life." *Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015). "[A] plaintiff seeking IFP status must allege poverty 'with some particularity, definiteness and certainty.'" *Id.* (quoting *United States v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981)).

In her affidavit, Plaintiff states that she is unemployed and has $170 in her checking account. (ECF No. 8 at 2.) Plaintiff states that she received zero income over the past year and that her application for disability benefits is "pending." *Id*. at 1–2. However, Plaintiff also states that she received state disability payments until her last payment in March 2026 when her state disability ended. *Id*. at 5. When asked if she expects her income or expenses to change in the next year, Plaintiff writes that she is "unsure" as she "applied for [d]isability" and the application is still pending. *Id.* at 5. Plaintiff does not indicate the amount of disability payments Plaintiff expects to receive in the future or when these payments may begin.

Plaintiff further states that her average monthly expenses total $1,076. *Id.* at 4–5. Plaintiff provides that she is approved for SNAP benefits, which presumably cover her

$298 of food expenses per month. *Id* at 4. Plaintiff also indicates that she spends $866 a month on rent or a home-mortgage payment, but she does not indicate how she finances these payments other than saying that she faces an "Eviction Risk." *Id*. Additionally, it is unclear how Plaintiff finances the remaining $180 in monthly utilities payments and $30 in monthly credit card charges.

Thus, Plaintiff provides insufficient financial information about how she meets her basic needs for the Court to determine if she qualifies to proceed IFP in this action. *See Bullard v. Smith*, No. 19cv65-WQH-LL, 2019 WL 338595, at *1 (S.D. Cal. Jan. 28, 2019) (noting the Court had insufficient financial information to determine if Defendant could proceed in forma pauperis when Defendant did not provide the amount of disability he received and what he would expect to receive in the future); *Bridgewater v. Bankson*, No. C 09-3639 SBA, 2010 WL 291786, at *3 (N.D. Cal. Jan. 19, 2010) (noting a denial of IFP "due to inconsistencies between Plaintiff's net income and her total expenses; Plaintiff stated she received $805 net income, and had $1600 in total expenses"); *Albra v. Selene Fin.*, No. 218CV00018APGPAL, 2018 WL 3371137, at *3 (D. Nev. May 8, 2018), *report and recommendation adopted,* No. 218CV00018APGPAL, 2018 WL 3340574 (D. Nev. July 6, 2018), *aff'd,* 744 Fed. Appx. 386 (9th Cir. 2018) (unpublished) (denying IFP motion and noting inconsistency where Plaintiff's "expenses, therefore, regularly exceed his monthly income by more than half" with no explanation).

The Court accordingly denies Plaintiff's IFP Motion without prejudice.

## III. INITIAL SCREENING OF THE SECOND AMENDED COMPLAINT

Even if Plaintiff's IFP application were sufficient, Plaintiff is cautioned that if she is granted IFP status, she will be subjected to screening pursuant to 28 U.S.C. § 1915(e)(2). The Court is required to screen cases filed by parties proceeding IFP. *Id*. 28 U.S.C. § 1915(e)(2) states that:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>
> (A) the allegation of poverty is untrue; or

> (B) the action or appeal—
> (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2). "The purpose of [screening] is to ensure that the targets of frivolous or malicious suits need not bear the expense of responding." *Nordstrom v. Ryan*, 762 F.3d 903, 907 n.1 (9th Cir. 2014). The standard used to evaluate whether a complaint states a claim is a liberal one, particularly when the action has been filed pro se. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "However, a liberal interpretation . . . may not supply elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Detailed factual allegations are not required but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[T]he mere possibility of misconduct" or "an unadorned, the-defendant-unlawfully-harmed-me accusation" falls short of meeting this plausibility standard. *Id.* at 678–79. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The SAC contains the following factual allegations:

1. From 1986 to 2006, Plaintiff was forced into a "Pornography/Human trafficking Scandalous program disguised as Section 8 operated by Defendant Housing Authority." (ECF No. 9 at 2.) During that time, Plaintiff "was investigating" Defendant Housing Authority for a variety of violations including RICO,

Conspiracy to Murder, Frauds and Swindles, and Wire Fraud. *Id*. Because of this investigation, Plaintiff claims "my daughters was targeted and my youngest daughter Jasala Armour Age 12 was an unsuccessful attempt" at murder. Defendants "planted a shotgun in my backyard where my daughter usually plays," and Plaintiff was "forced in slavery servitude for 20+ years." *Id*. During this time, Plaintiff alleges she was "consistently followed" and "video recorded and strangers frequent my address or locations wile about running errands." *Id*. at 3. This information was "compromised by the defendants." *Id*. Additionally, Plaintiff claims that "camera's locations were in my daughter's bedroom" and "the defendants are responsible for human trafficking." *Id*.

2. In March 2007, Plaintiff alleges her daughter Chanel E. Armour was targeted, and interstate commerce was used to "facilitate murder for hire." *Id*. at 4. Additionally, Plaintiff alleges when she requested to be released from the Section 8 program, "they refused me and sent a check instead I sent it back with an explanation I wrote to them 'I want off this pornography scandal program.'" *Id*. No named defendant is mentioned in connection with these allegations.
3. From July to November 2007, Plaintiff alleges illegal interception on behalf of Defendant Verizon who "maintained unauthorized free service despite disconnect letter." *Id*.
4. From 2006 to 2007, Plaintiff alleges Defendant PSE&G "refused shutoff" notices and that "Service [was] maintained to power video surveillance." *Id*.
5. In September and October 2007, Plaintiff alleges that a telephone call between Plaintiff and her daughter was "intercepted by Verizon tap." *Id*. Also during this period, Plaintiff alleges a "Landlord Police Officer" installed a "video intercept apparatus, not smoke detector." *Id*.
6. From October to November 2007, Plaintiff alleges that "Verizon reported intercepted call to Easton Housing Authority. Housing Authority reported to NJ Defendant. NJ Defendant ordered murder." *Id*.

7. Plaintiff alleges that on November 29, 2007, "Chanel Armour [was] murdered in Easton, PA by killers sent from NJ" who had the motive of "Silencing witness who discovered surveillance." *Id*. No named defendant is mentioned in connection with these allegations.
8. Plaintiff alleges that a "[p]ublic admission of witness elimination" occurred at the "funeral of plaintiff photo" on December 8, 2007. *Id*. at 5. No named defendant is mentioned in connection with these allegations.
9. In January 2010 after a trial occurred, Plaintiff alleges she "provided proof to the courthouse and all material was stolen twice." *Id*. No named defendant is mentioned in connection with these allegations.
10. Plaintiff alleges she has had several OB/GYN visits, and five of her OB/GYN doctors were murdered, disappeared, or silenced. *Id*. Plaintiff believes "an implant is preset possibly near the fallopian tube…also one maybe planted in my right ear." *Id*. No named defendant is mentioned in connection with these allegations.
11. Plaintiff alleges that "[m]usic and songs written were stolen to enforce me to remain on the Section 8 program" and "employment sabotage via aka Housing Authority rules" occurred. *Id*.
12. Finally, Plaintiff alleges "[d]ue to my investigations…they sabotage every job, every business, every company was causation for relapsing my life insurance, 401k." *Id*. Plaintiff raises an Equal Protection Clause claim. No named defendant is mentioned in connection with these allegations.

Plaintiff alleges eleven violations of federal constitutional provisions and statutes, many of which are criminal statutes. *Id.* at 5–6. She requests a federal grand jury investigation, FBI seizure and forensic analysis of three smoke detector units, US Marshals protection, indictment of all enterprise members, civil damages, and $220 million in pain and suffering. *Id.* at 6.

The SAC only names "Housing Authority Et Al" as a defendant in this case; however, Verizon, "PSE&G," and an "NJ Defendant" are all referred to throughout the

SAC. (ECF No. 9.) The SAC mentions Defendant Housing Authority once in reference to RICO violations and a "Pornography/Human trafficking scandalous program disguised as Section 8." and once when alleging Housing Authority reported an intercepted call to "NJ Defendant." *Id*. at 2, 4. The SAC mentions Verizon when alleging that Verizon installed a wiretap "despite disconnect letter" and that Verizon intercepted a call between Plaintiff and her daughter. *Id*. at 4. Further, the SAC alleges Verizon reported an intercepted call to Housing Authority. *Id*. PSE&G is only mentioned once when Plaintiff alleges PSE&G "refused shutoff" and conducted "video surveillance." *Id*. "NJ Defendant" is only mentioned once and is not further identified. *Id*. Plaintiff broadly references "they" or "the defendants" throughout the SAC without naming these general defendants. *See generally*, *id*.

Plaintiff does not allege sufficient facts clearly identifying the defendants and connecting defendants' conduct to the alleged statutory and constitutional violations. Where Plaintiff does connect a fact to a specific named entity, she often alleges violations of criminal statutes that are not actionable in a civil suit. (ECF No. 9 at 3–4.) Where Plaintiff alleges violations of a civil statute in connection with a specific entity, the SAC includes "mere conclusory statements" about the entity's conduct rather than sufficient factual matter supporting a cause of action. *Iqbal*, 556 U.S. at 678. Given the lack of factual allegations detailing any defendants' misconduct, the SAC does not "plead[] factual content that allows the court to draw the reasonable inference" that any defendant is "liable for the misconduct alleged." *Id*. As currently pled, the Court finds that Plaintiff fails to allege sufficient facts to state a plausible claim for relief against any defendant.

## IV. CONCLUSION

IT IS HEREBY ORDERED that the IFP Motion (ECF No. 8) is denied without prejudice. No later than forty-five (45) days from the date this Order is entered, Plaintiff may either pay the filing fee or refile an IFP motion that addresses the deficiencies identified in this Order relating to the source of financing of Plaintiff's expenses. If Plaintiff

does not pay the filing fee or file a renewed IFP motion, the Court will dismiss the SAC and direct the Clerk of the Court to close the case.

IT IS FURTHER ORDERED that if Plaintiff files a renewed IFP motion, she shall also file an amended complaint at the same time that corrects the deficiencies identified in this Order. If Plaintiff files a renewed IFP motion and does not also file an amended complaint, the Court will order the Clerk of the Court to close the case.

Dated: 11/6/2026

William Q. Hayes

Hon. William Q. Hayes
United States District Court